**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02818-DDD-KLM


CAROL NICHOLS, on behalf of herself and
similarly situated employees,
Plaintiff(s),
v.
DENVER HEALTH AND HOSPITAL
AUTHORITY,
Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENSE COUNSEL**

---

ENTERED BY SPECIAL MASTER JANE G. EBISCH, ESQ.

This matter is before the Master pursuant to the Order Appointing Master for Discovery dated August 11, 2020 [#74]. The Magistrate Judge referred the following motion, among others, to the Master: Plaintiff's Motion for Sanctions [#88].

The Special Master has reviewed the briefing for the pending motion as well as the applicable case law and has considered the entire docket, including the hearing transcript, deposition transcripts, and the exhibits at issue. Oral argument would not materially assist in the resolution of these motions. For the following reasons, the Special Master DENIES Plaintiff's Motion for Sanctions.

I.      BACKGROUND

On July 21, 2020, Defendant Denver Health and Hospital Authority ("DHHA") filed a Motion for Sanctions [#53] based on the conduct of Plaintiff's counsel at the deposition of a defense witness, Jill Damman. The matter was referred to the Special Master [#74]. On

September 14, 2020, the Special Master issued an Order on Pending Discovery Motions [#86], granting the Motion for Sanctions against Plaintiff's counsel.

One week later, on September 21, 2020, Plaintiff filed her Motion for Sanctions [#88]. In her Motion, Plaintiff makes plain that she is filing her Motion for Sanctions against DHHA's defense counsel, particularly Mr. Hudgens, because she wants an equal opportunity to have opposing counsel sanctioned, as her counsel was. Motion for Sanctions, p. 14 [#88]: ". . . [T]he Special Master . . . imposed severe sanctions upon Plaintiff's counsel for improper conduct . . .. Plaintiff's counsel asks, however, that the Magistrate Judge and Special Master acknowledge, and similarly sanction, Mr. Hudgens' pattern of provably false statements that have corrupted the adjudicative process."

Plaintiff further makes clear that anything other than an order granting her admittedly tit-for-tat Motion for Sanctions establishes the Special Master's, and ultimately the Court's[1], racial bias against her, by stating:

> ". . . [T]his matter concerns severity and leniency bias in the imposition of disparate discipline, where decision-makers severely punish one party/group while overlooking, condoning, or extending the benefit of the doubt to another party/group for equal, or even far worse, misconduct. Severity and leniency bias infect multiple systems where African Americans seek equal treatment . . . even in the courtrooms . . .."

Motion for Sanctions [#88], p. 15.

Plaintiff proceeds to argue that defense counsel Hudgens made "materially" false statements in discovery pleadings that have "prejudiced Plaintiff" and "perpetrated a fraud on the court," behavior she presumably claims is equal to or worse than Plaintiff's counsel's unprofessional and outrageously inappropriate comments during counsel's deposition of defense

---

[1] Plaintiff has stated that she will ". . . appeal any adverse ruling from here on out. . .," presumably including this Order. Plaintiff's e-mail to defense counsel, October 9, 2020 [#109-1, p. 5].

witness Jill Damman.  A close and unbiased review of the discovery process, and Mr. Hudgens'

participation in it, establishes that the grounds for Plaintiff's argument are so tenuous as to

almost meet the definition of frivolous.

II.     THE BITTER BATTLE OVER DHHA EMPLOYEE SHEILA PAUKERT'S
        ROLE IN PLAINTIFF'S EMPLOYMENT TERMINATION

A.   The Basis for Plaintiff's Claim for Sanctions Against Defense Counsel Hudgens

Plaintiff's goal is to convince the fact-finder that the Defendant was and has been aware

that DHHA employee Associate Chief Human Resources Officer Sheila Paukert "presided over

the ABP [accountability-based performance] decision-making process in concert with her

subordinate, Jill Damman . . . ," and that Mr. Hudgens, DHHA's counsel, knew of this fact and

actively sought to hide it from Plaintiff and the Court.

Plaintiff's motion is constructed from a series of events that has taken place during the

discovery process, as follows:

1.     Plaintiff claims DHHA stated in its response to Plaintiff's Interrogatory #7,

       Request for Production Response numbers 12, 14[2] and in other discovery

       responses, the following, which Plaintiff claims is untrue:

       There is no dispute that Ms. Paukert was not responsible for terminating Plaintiff
       – she was not Plaintiff's direct supervisor and did not handle the investigation that
       resulted in Plaintiff's termination . . . and [t]here is no dispute that Ms. Paukert
       and Dr. Platnick were not involved in the decision to terminate Plaintiff . . .
       complaints lodged against Mr. Paukert are not relevant to any issue in this case."

       Motion for Sanctions, [#88] p. 5.

2.     Plaintiff claims defense counsel Hudgens falsely stated, in a hearing on May 22,

       2020, that, ". . . [W]hen Jill Damman is deposed, and when Sheila Paukert is

---

[2] Defendant claims that Plaintiff improperly cited this block quote, and that the quoted
language was provided by Defendant in response to Interrogatory 12.

deposed, they will unequivocally state that Jill Damman made the decision to terminate Plaintiff." *Id*.

3.    Plaintiff acknowledges that defense counsel Hudgens agreed that Ms. Paukert discussed the investigation with her subordinate Ms. Damman. But defense counsel Hudgens continued to claim that Ms. Damman made the decision without the direct influence and input of Ms. Paukert into the decision-making process. Motion for Sanctions [#88], p. 6.

4.    Plaintiff claims she engaged in additional discovery, particularly by taking the depositions of Ms. Paukert and Ms. Damman.  During Ms. Paukert's deposition, Ms. Paukert stated that she was involved in the decision-making process to terminate Plaintiff's employment because she participated in, and gave input at a meeting where the termination decision was allegedly made.  Motion for Sanctions [#88], p. 7.  Ms. Damman confirmed that she involved Ms. Paukert in all decisions concerning Plaintiff's employment because that is the standard process. *Id.*

5.    Plaintiff "discovered" that Ms. Paukert sent a text message to Ms. Damman recommending that Ms. Damman conduct her termination meeting with the Plaintiff on the day the text message was sent:  June 21, 2019.  Motion for Sanctions [#88], p. 8.

6.    Plaintiff claims defense counsel refused to supplement Defendant's discovery responses, upon Plaintiff's demand, following the depositions. *Id.*

7.    Plaintiff's Motion to Compel Defendant to supplement its discovery responses regarding Ms. Paukert was granted, in part.  The Special Master concluded:

4

> "Plaintiff has proffered sufficient evidence to show that Ms. Paukert was
> substantially involved in the decision to terminate Plaintiff's employment."
> Motion for Sanctions [#88], p. 9, citing Special Master Order [#86], p. 17.

Plaintiff has concluded that Ms. Paukert was the decision-maker, or co-decision-maker, regarding Plaintiff's termination, and that Ms. Paukert ". . . exhibited bias and animus towards African American employees, including herself, particularly in disciplinary and termination decisions."  Motion for Sanctions, [#88], p. 2.  She cites deposition testimony and the Special Master's order holding that Ms. Paukert was "substantially involved" in the decision to terminate Plaintiff, thereby opening the door to additional discovery from Defendant about Ms. Paukert.

Plaintiff claims that because Ms. Paukert and Ms. Damman agreed in their depositions that Ms. Paukert was involved in the decision to terminate Plaintiff, and because the Special Master found that Ms. Paukert was "substantially involved," the Special Master must then conclude that defense counsel "deliberately misrepresented defense evidence exclusively within his control, which constitutes a 'fraud upon the court,'" *citing Kern River Gas Transmission Co., v. 6.17 Acres of Land*, 156 Fed. Appx. 96, p. 17 (10th Cir. 2005).  Plaintiff claims that Mr. Hudgens' characterization of Ms. Paukert's involvement in Plaintiff's termination was "diametrically false," Motion for Sanctions [#88], p. 12.  She claims that Mr. Hudgens should be sanctioned for maintaining this argument, and for refusing to produce additional personnel records without requiring her to file a motion with the court, compelling Defendant to do so.

B.  <u>DHHA Maintains It Has Honestly Disclosed Its Position</u>

In Mr. Hudgens' defense, Defendant claims that it has consistently admitted that Ms. Paukert was involved in the decision to terminate Plaintiff's employment, but maintains its claim that Ms. Damman was the decision-maker.  Defendant points out that Plaintiff had not heretofore

objected to the language quoted by Plaintiff from Defendant's response to Interrogatory 12 (improperly cited by Plaintiff). Defendant reports that Plaintiff did not notify Defendant of her objection to that particular discovery response prior to her filing of the Motion for Sanctions. Defendant points out that it noted in its responses to Interrogatory 4 and Request for Production 7 that Ms. Paukert ". . . did not make the determination to terminate Plaintiff . . .," but had ". . . factual knowledge . . . regarding the escalation of the investigation into Plaintiff's conduct."

In defense counsel Hudgens' defense, Defendant further notes that the Magistrate Judge expressed an understanding of the Defendant's position regarding Ms. Paukert's involvement in the decision to terminate Plaintiff's employment:

> There's a lot of disagreement here about the language being used to describe Ms. Paukert's involvement in this whole situation. I understood Defendant to say that she was not a decision-maker or the decision-maker, nevertheless she was somehow involved, as we all know.

Transcript of May 22, 2020 Hearing, 62:4-8; 63:21-25 [#104-2].

III.     LACK OF EVIDENCE TO SHOW INTERFERENCE WITH DISCOVERY

Plaintiff relies on Fed.R.Civ.P. 37 to support her claim that Mr. Hudgens should be sanctioned because he "interfered with discovery . . . through deliberate misrepresentations," Motion for Sanctions, [#88] p. 10. Plaintiff has targeted Defendant's counsel, Mr. Hudgens, in her Motion for Sanctions, and requests an order requiring Mr. Hudgens to pay Plaintiff's attorney's fees for motions compelling information about Ms. Paukert and for payment of the Special Master fees to adjudicate discovery issues related to Ms. Paukert.

Fed.R.Civ.P. 37 generally provides for sanctions against parties unjustifiably resisting discovery. Defendant's responses to Interrogatory No. 4 and Request for Production No. 7 show that Defendant consistently explained its position regarding Ms. Paukert's role in the decision to terminate Plaintiff's employment. Plaintiff's para-phrasing of Defendant's discovery responses

intentionally omits the full explication of Defendant's position that Ms. Paukert was not responsible for terminating Plaintiff's employment because Ms. Paukert was not Plaintiff's direct supervisor and did not handle the investigation that resulted in Plaintiff's termination. Whatever factual knowledge she possessed was limited to communications regarding the escalation of the investigation into Plaintiff's conduct.   *See* Defendant's Response to Interrogatory No. 4, Request for Production No. 7, (#48-1, pp. 8-9, 19-20).

After conducting depositions following the May 22, 2020 hearing on discovery disputes, Plaintiff presented the Court with sufficient additional evidence to prompt an Order allowing Plaintiff to amend her discovery requests and narrowly tailor them to obtain information from DHHA about complaints against Ms. Paukert that relate directly to Plaintiff's claims.   Defendant had resisted production of additional information about Ms. Paukert's employment history because of the long-established privacy concerns about personnel files.  *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008) ("[P]ersonnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly."); *Cunningham v. Standard Fire Ins. Co.*, Civil Action No. 07-cv-02538-REB-KLM, 2008 U.S. Dist. LEXIS 117304, at *11 (D. Colo. July 1, 2008) (restricting discovery of personnel files to practices directly related to Plaintiff's claims).  The parties continued to disagree as to whether DHHA's personnel records relating to Ms. Paukert must be disclosed.

The matter was presented to the Court by Plaintiff.  Ultimately, a decision was made to allow Plaintiff to amend her discovery request to obtain background personnel information about Ms. Paukert related to the claims in this case.  However, this order is not equivalent to a finding that Defendant had intentionally misrepresented Ms. Paukert's role in Plaintiff's termination, nor

does it signal any kind of definitive finding regarding DHHA's alleged race discrimination.  This close-call decision in a relatively routine discovery dispute does not crown Plaintiff with the glory of uncovering massive deception, lies and "mendacity"[3] perpetrated by Mr. Hudgens.  Plaintiff's attempt to shoehorn her sanctions argument into this situation falls flat.

No evidence exists that Mr. Hudgens took any action to resist discovery, besides maintaining a legal position that Ms. Paukert's confidential personnel records would not be disclosed.   The fact that this position was overturned does not mean that it was an unreasonable one.

Mr. Hudgens did not assist the Defendant to demonstrably lie in any discovery responses.  Instead, Defendant's discovery responses show a good-faith effort to describe, in writing, the decision-making authority of Defendant's employees.  As is common in contentious litigation, the parties were allowed to obtain further details directly from witnesses in the discovery process.

Plaintiff's counsel's personal animus against Mr. Hudgens, in particular, has taken center-stage in this dispute, and it reflects a lack of professionalism by Plaintiff's counsel.  Defendant submitted numerous examples [#109] of instances where, between the parties, Plaintiff's counsel personally insulted Mr. Hudgens, including an instruction to him to "self-immolate:"

- "I just don't think you understand employment law, Mr. Hudgens, either doctrinally or practically . . .. fortunately, having an MSW helps me understand the dynamics and conflicts better than the average bear.  You should take my course on mendacity."

---

[3] Plaintiff accuses Defendant of "mendacity" in almost every pleading she files with this Court.  *See e.g.*, Plaintiff's Response to Motion to Restrict and Request for Forthwith Hearing (#59), p. 8; Plaintiff's Partial Objection to Motion to Restrict [#75], p. 10; Plaintiff's Reply in Support of Motion for Sanctions [#106], pp. 1, 8; Plaintiff's Motion to Withdraw from Stipulated Protective Order [#80], p. 1

Supplement [#109-2], August 7, 2020 e-mail to Mr. Hudgens informing him that his Motion for Sanctions against Ms. Archer was frivolous.

- "Thus, if you want DHHA to pay another $20K in a misguided effort to get me in trouble, when in fact, it will likely get you in trouble worse, then go self-immolate."

Supplement [#109-1], July 21, 2020 e-mail to Mr. Hudgens regarding Motion for Sanctions.

- Given that you have lied your way through the defense of this case, I will not let you attack my credibility.

Supplement [#109-1], October 9 2020 e-mail to Mr. Hudgens regarding conferral on Motion for Leave to Respond to Objection to Special Master Order.

Plaintiff's counsel's demonstrated personal and professional animus against Mr. Hudgens has improperly spilled into a dueling-sanctions dispute, now presented to this Court.  The Special Master finds that Defendant's written discovery responses, and refusal to voluntarily amend them or voluntarily produce personnel records, was not "abusive" simply because Plaintiff later was granted the right to amend her discovery requests to obtain additional information from DHHA about Ms. Paukert.  Defendant did not refuse to answer discovery, did not fail to disclose Ms. Paukert as a person involved in the decision to terminate Plaintiff's employment, and did not attempt to cover-up the names of persons involved in the termination decision.  Neither did Defendant refuse to allow Plaintiff to depose DHHA's employees involved in the decision-making process, nor did it engage in obstructive behavior which prevented Plaintiff from asking every question she wanted to ask during the depositions.

All of the evidence presented to this Court informs it that the parties have engaged fully and completely in the discovery process, including skirmishes to determine the boundaries of confidentiality and scope of discoverable information relating to personnel records.  Nothing in the record establishes a material interference in the discovery process by Mr. Hudgens so as to

have prejudiced Plaintiff.   No legal or factual basis exists to support an award of sanctions against Mr. Hudgens or any other defense counsel for a violation of Fed. R. Civ P.37.

IV.   THE EVIDENCE IS INSUFFICIENT TO FIND THAT DEFENSE COUNSEL PERPETRATED A FRAUD ON THE COURT

Plaintiff relies on *Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, in Salt Lake Cty., Utah*, 156 Fed. Appx. 96, 103 (10th Cir. 2005) to support her claim that Mr. Hudgens perpetrated a fraud on the court.  The Tenth Circuit strictly reviews a claim of fraud on the court, and has held that allegations of nondisclosures in discovery, precisely what Plaintiff claims here, do not provide a basis for sanctions:

> "Fraud on the court ... is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court. It is thus fraud ... where the impartial functions of the court have been directly corrupted."

*Kern River Gas Transmission, supra, citing United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir.2002) (*quoting Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir.1985)). In addition, clear and convincing evidence is needed to prove fraud on the court. *Id*. The Tenth Circuit has established that "intent to defraud is an 'absolute prerequisite' to a finding of fraud on the court." *Zurich N. Am. v. Matrix Serv., Inc*., 426 F.3d 1281, 1291 (10th Cir.2005) (*quoting Robinson v. Audi Aktiengesellschaft,* 56 F.3d 1259, 1267 (10th Cir.1995).  None of the elements required to prove a fraud on the court are present here.

Plaintiff's conclusion that Mr. Hudgens' words at the May 22, 2020 hearing ". . . would have formed the impression in the mind of reasonable fact-finder that Ms. Paukert did not take part in the events/decisions challenged herein as discriminatory" is an unfounded leap of logic. Motion for Sanctions [#88], p. 6.  Mr. Hudgens' reasonable legal argument did not corrupt the

impartial function of the court, and Magistrate Judge Mix confirmed her understanding of DHHA's position.

A full review of the transcript of the May 22, 2020 hearing establishes that DHHA clearly acknowledged that Ms. Paukert was involved in the decision to terminate, but that Ms. Damman ultimately made it. At the May 22, 2020 discovery hearing, defense counsel Hudgens clarified: "What we have said is that she [Ms. Paukert] was not responsible for terminating Plaintiff. She did not make the decision to terminate Plaintiff, and she was not her direct supervisor . . .. our discovery responses acknowledge, that Ms. Paukert discussed the investigation into Plaintiff's conduct with Jill Damman. That is true." Response to Motion for Sanctions [#104], pp. 5-6, quoting Transcript of May 22, 2020 Hearing at 21:11-22:4. This disclosure to the Court clarified Defendant's discovery responses to Interrogatory 4 and Request for Production 7.

A "reasonable fact-finder," especially a fact-finder with extensive professional experience in evaluating evidence and understanding roles in an employment situation, is able to discern the difference between being "involved" or "substantially involved" in a decision to terminate an employee, as Ms. Paukert was, as compared to being the decision-maker, as DHHA claims Ms. Damman, alone, was. In the present case, Ms. Damman and Ms. Paukert both testified consistently with Mr. Hudgens' representation at the May 22, 2020 hearing:

- Ms. Damman: "As Carol's manager, I did make the termination decision." Deposition of Jill Damman, [#53-1], 196:13-14.

- Ms. Paukert: "Jill Damman completed the investigation, she made the decision to terminate, and I supported her decision to do so." Deposition of Sheila Paukert, [#73-2], 176:4-8.

Plaintiff has not provided any evidence, much less clear and convincing evidence, that Mr. Hudgens perpetrated a fraud on the court by his statements at the hearing on May 22, 2020,

or at any other time.  On the contrary, the record shows that Mr. Hudgens presented a legal argument to the Court on behalf of his client based on DHHA's argument that Ms. Damman, and not Ms. Paukert, was the ultimate decision-maker regarding termination of Plaintiff's employment.   Whether or not the Court will find this to be true, and whether or not it will matter in the ultimate outcome of this case, is yet to be determined.

For the foregoing reasons, and in accordance with the Order Appointing Master for Discovery, #74, IT IS ORDERED as follows:

(1)  The Plaintiff's Motion for Sanctions is DENIED.

(2) Payment for the below-signed Special Master's fees and costs for work performed by the below-signed Special Master relating to the Plaintiff's Motion for Sanctions shall be paid 100% by counsel for the Plaintiff, for the reasons set forth herein.  A statement detailing the Special Master's time and fees shall be forwarded directly to counsel for the parties.

DATED:  November 13, 2020                    BY THE SPECIAL MASTER:

/s/ Jane G. Ebisch, Esq.