**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02818-DDD-KLM

CAROL NICHOLS, on behalf of herself and other similarly situated employees,

    Plaintiff

v.

DENVER HEALTH AND HOSPITAL AUTHORITY,

    Defendant.

**PLAINTIFF'S FRCP 72(a) OBJECTIONS TO MAGISTRATE JUDGE MIX'S DECEMBER 23, 2020 REPORT AND RECOMMENDATION [ECF 153] DENYING HER APPLICATION TO PROCEED *IN FORMA PAUPERIS***

1. **Plaintiff and Her Grandchildren Are Dependent on Public Benefits**

Carol Nichols, all agree, is indigent. *See* ECF 107, p5 ⁋ 2 (describing Plaintiff as indigent). In the parties' D.C. COLO.L.CivR. 7.1(a) conference, DHHA acknowledged that Plaintiff is indigent but insists that her indigency should not impact the allocation and payment of Special Master fees. *Compare* FRCP 53(g) (a court *must* consider the parties' means when allocating Special Master fees). Since her unlawful termination in June 2019, Plaintiff and her grandchildren have depended on public assistance apart from irregular income received from conducting Equal Employment Opportunity (EEO) investigations for the Department of Interior. Her Corrected Form AO 239, Paragraph 1, lists income over the past 12 months that rendered Plaintiff eligible for *most* federal and Colorado public assistance programs for health care, food, housing and energy assistance. In November 2020, however, Plaintiff finally received approval for Social Security Disability Insurance (SSDI) income because she suffered a setback in September 2020 in her 11-year battle with leukemia/lymphoma. Indeed, the Magistrate Judge expedited these proceedings on June 15, 2020 based upon medical certification from her oncologist, Michael Maris, M.D. that COVID-19 could kill Plaintiff at any time, given her compromised immune system. ECF 50. The parties conducted a trial preservation deposition on November 10, 2020: Plaintiff clear-headedly recognizes her tenuous health but resolves to keep fighting her case and to keep her grandchildren out of foster care as long as physically possible.

Plaintiff's health, fortunately, is improving, and she hopes to lift her family out of poverty by returning to paid work, at least part-time. ECF 146-2, Pltf's Dep. 140:9-13; 141:1-8. Meanwhile, Plaintiff and her grandchildren receive just enough SSDI income to still qualify for most public assistance. Plaintiff is indigent, if not "absolutely destitute." *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339-40 (1948) ("a person should not be denied the opportunity to proceed under 28 U.S.C. § 1915(a) simply because he or she is not 'absolutely destitute'").

**2.   Plaintiff's Personal Circumstances Differ Markedly from Matters the Magistrate Judge Cited**

The Magistrate Judge cited three cases in which the tribunal denied *In Forma Pauperis* (IFP) status. *Bateman v. Nexstar Media Group, Inc.*, No. 2:18-cv-00815-DBB, 2020 WL 6927287, at *1 (D. Utah Nov. 5, 2020); *Brewer v. City of Overland Park Police Department*, 24 F. App'x at 979; *Westgate v. Astrue*, No. 08-4136-JAR, 2008 WL 5110906 at *1 (D. Kan. Dec. 2, 2008). These cases, however, bear no resemblance to Plaintiff's dire circumstances. First, in all cases, the plaintiffs sought IFP status to avoid the federal filing ($350) and docket ($52) fees, $402. Notably, 28 U.S.C. §1915 does not apply exclusively to prisoners, nor does it only cover filing fees; rather, the IFP statute also applies to all ordinary adjudicative costs associated with litigation and appeal. *See* 28 U.S.C. §1915(a) and (c) (preparing the transcript, printing Record). The comparatively small filing fee amounts in *Bateman, Brewer, and Westgate* stand in sharp contrast to the $5,505.49 billed to Plaintiff *thus far* in Special Master adjudicative fees here. Logically, if 28 U.S.C. §1915 was designed to ensure court access to indigent litigants by relieving them of a $400 *fixed* filing fee, then *a fortiori* the imposition of $5,505.49 (and counting) in private Special Master fees should raise even graver access to justice concerns. Further, unlike the *fixed* $400 filing fee, the Special Master has accrued charges in six-minute increments at $385 *per hour*, *still* accruing thousands in fees that Plaintiff can neither foresee nor afford. *See* ECF, 74 p5; *compare Westgate*, 2008 WL 5110906 at *1 (plaintiff could pay $364 filing fee with one month's discretionary income); *Brewer*, 24 F. App'x at 979 (plaintiff can pay filing fee when monthly income exceeded expenses by a few hundred dollars); *Bateman,* 2020 WL 6927287 at *1 (D. Utah Nov. 5, 2020) (plaintiff can pay appeal filing fee with $499.99 in discretionary monthly income).

Second, in none of the cases cited by the Magistrate Judge were the plaintiffs dependent on public benefits and dying of cancer like Plaintiff. By making an indigent plaintiff pay Special

Master fees for seeking basic civil discovery, the tribunal is effectively redistributing Plaintiff's public disability benefits into private pockets (i.e., Special Master Jane Ebisch, Esq.). And finally, in none of cited cases was the indigent plaintiff prosecuting a public interest matter, ostensibly afforded "special protection" under FRCP 53, *see* Subdivision (h), 2003 Committee Comment.

Indeed, in allocating Special Master fees, the court must consider the "nature and amount in controversy, the parties' means[1], and the extent to which any party is more responsible than other parties for the reference to a master." FRCP 53(g). Instead of contemplating Plaintiff's circumstances and the public interest nature of this litigation, the Magistrate Judge faulted her for inadvertently exceeding page limitations when seeking critical decision-maker and pretext evidence in discovery—i.e., evidence exclusively within DHHA's possession that DHHA deliberately withheld. *See* ECF 74. This punishment (i.e., prohibitive adjudication fees) hardly seems commensurate with the "crime"—i.e., an easily correctible filing gaffe by her counsel.

Plaintiff knew when she filed this systemic Title VII and ADA lawsuit that she may die before getting her day in court. As a 30-year federal EEO professional, however, Plaintiff also knew that the employment practices she observed and experienced as DHHA's Employee Relations Investigator violated Title VII and ADA protections guaranteed to herself and every other DHHA employee. She initiated this systemic Title VII and ADA matter because private prosecution has become the primary vehicle for Title VII and ADA enforcement. *See e.g., Williams*

---

[1] Information provided by DHHA under the Colorado Open Records Act (CORA), §24-72-202 *et seq.*, C.R.S. (2020), shows that in 2019 alone, DHHA paid $495,437.22 in non-recoverable defense fees in employment discrimination matters, demonstrating that DHHA has the means and will to pay Special Master fees. By contrast, Plaintiff and her grandchildren subsist on SSDI benefits without disposable income.

*v. Elder,* 2020 CO 88 (Colo. 12/21/2020, ₱26)² (citing *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158F.3d 1074, 1081(10th Cir. 1998).

3.  **<u>Forcing Indigent Title VII and ADA Plaintiffs to Pay for Private Adjudication Frustrates Enforcement</u>**

This matter demonstrates the strong headwinds that plaintiffs face when prosecuting systemic Title VII and ADA matters. Discrimination victims who lose their livelihoods and health insurance cannot afford to seek redress in federal court, if as here, they must pay $5,505 (and *counting*) *private* discovery adjudication. *Shankle v. B-G Maint. Mgmt. of Colo., Inc*., 163 F.3d 1230, 1233-35 (10th Cir. 1999) ("a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the [adjudicative] forum."); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 665 (6th Cir. 2003) (imposition of private adjudicative costs deters effective vindication of Title VII rights). The IFP provision 28 U.S.C. § 1915(a) ensures equal access to justice by removing the financial barriers to court access—e.g., filing fees, appellate costs. While Plaintiff's recent receipt of SSDI in November 2020 does improve her plight, the Magistrate Judge's insistence that she use public disability benefits to pay $5,505 (and counting) in private Special Master fees drives Plaintiff further into poverty and raises conspicuous access to justice issues for indigent and disabled plaintiffs with meritorious Title VII and ADA claims. *Am. Express Co. v. Italian Colors Rest*., 133 S. Ct. 2304, 2310 (2013) (effective vindication clause "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable."); *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 379 (10th Cir. 2018). Even where the parties have agreed to private adjudication (i.e., arbitration) and agreed

---

² Notably, *Williams v. Elder*, 2020 CO 88, is the companion case to *Houchin v. Denver Health,* 2020 CO 89, handed down on December 21, 2020, and expressly rejecting DHHA's claim of immunity from EEO claims.

upon a factfinder they deem knowledgeable, exorbitant adjudicative fees like the Special Master's here make access to this forum impracticable.

These access to justice concerns merit serious evaluation, not personal offense. Logically, the consequences of outsourcing discovery disputes to private Special Masters falls far more heavily on indigent employees like Carol Nichols than on employers like DHHA. Thus, the Magistrate Judge's threat to assign a Special Master at the Scheduling Conference, later verified with PACER data, created a cruel Hobson's Choice: (1) fight to compel this critical evidence (e.g., about a decision-maker and pretext) and risk referral to a Special Master and unaffordable adjudicative fees, *versus*, (2) foregoing this deliberately withheld evidence and facing nearly certain dismissal on summary judgment. *Bernal v. Denver Health,* Case No. 1:18-cv-02697-DDD-KLM, 2020 U.S. Dist. LEXIS 20075 (dismissing action on summary judgment for lack of pretext evidence); *Summers v. Green River Corp.*, Case No. 1:17-cv-02132-DDD-MEH, 2019 U.S. Dist. LEXIS 110897 (same). Indigent Title VII and ADA litigants should not have to face this choice, nor the choice of using their SSDI benefits to pay for private adjudication of statutory rights. Plaintiff requests, therefore, that the District Court reverse the Magistrate Judge's December 23, 2020 Report and Recommendation denying her Motion to Proceed *In Forma Pauperis.*

Respectfully submitted this 6th day of January 2021.

s/ Merrily S. Archer
Merrily S. Archer, Esq., M.S.W.
EEO Legal Solutions LLC
Counsel for Nichols *et al*
600 17th Street, Suite 2800-South
Denver, Colorado 80202
(303) 248-3769 (direct)
(303) 915-5486 (text/cell)
archerm@eeolegalsolutions.com
www.eeolegalsolutions.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) permitting opening motions/briefs up to **4,000** words and his November 20, 2020 Order [EFC 127] delimiting objections under FRCP 72(a) to five pages: this Motion contains **1,531** words and does not exceed **five** pages of argument.

## CERTIFICATE OF SERVICE

The undersigned certifies that she has served a copy of the foregoing Objection to Special Master Order this 6th day of January 2021 through the Court's electronic filing system as follows:

Alice Conway Powers, Esq.
Jon Olafson, Esq.
Benjamin Hudgens. Esq.
Lewis Brisbois PC
1700 Seventeenth Street, Suite 4000
Denver, Colorado 80203
(720) 292-2028 (direct)
(303) 861-7767 (fax)
Alice.powers@lewisbrisbois.com
www.lewisbrisbois.com