IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02818-RMR-KLM

CAROL NICHOLS, on behalf of herself and similarly situated employees,

    Plaintiff,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND CERTIFICATION OF FACTS REGARDING CONTEMPT OF COURT**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **FRCP 53(f) Appeal of the Special Master's "Clearly Erroneous" Ruling Imposing Sanctions, Fees, and a Contempt Citation for an Alleged "Benign" Violation of the Protective Order** [#207][1] (the "Objection"). Defendant filed a Response [#212] to the Objection [#207], and the Court permitted Plaintiff to file a Reply [#213]. *See Minute Order* [#218].

On April 26, 2021, Defendant filed a Motion for Sanctions for Repeated and Intentional Violations of the Protective Order [#177] (the "Motion"). Plaintiff filed a Response [#177], and Defendant filed a Reply [#190]. The Motion [#177] was referred to the undersigned, *see* [#179], who in return referred it to the Special Master who had previously been appointed to the case, *see* [#74, #180].

---

[1] "[#207]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

- 1 -

On August 2, 2021, the Special Master issued an Order Granting Defendant's Motion for Sanctions Against Plaintiff for Violations of Protective Order [#205] (the "Order"), recommending that:

> [t]he Court order that Plaintiff be held in contempt of court for disobeying the specific terms of the Protective Order, and that Plaintiff's counsel be ordered to pay a fine in the amount of $250.00. Additionally, Plaintiff's counsel should be ordered to pay [Defendant]'s fees and costs for preparing the Motion for Sanctions and its Reply. Further, the Special Master recommends that the Court, employing the "coercive remedy" allowed for contempt of a court order, advise Plaintiff's counsel that any further violation of the terms of the Protective Order will result in more serious sanctions . . . .

*Order* [#205] at 10. The Master further recommended that "[t]he Court deny the remaining requests for sanctions against Plaintiff and her counsel." *Id.* In addition, the Master ordered the parties to share equally the Master's fees and costs for work performed on the Motion [#177]. *Id.* In the present Objection [#207], Plaintiff argues that the Master erred in reaching each of these recommendations and rulings.

Having reviewed these filings and attached evidence, the entire case file, and the applicable law, the Court is fully advised in the premises. For the reasons stated herein, the Court certifies the facts set forth below and **RECOMMENDS** that the Objection [#207] be **SUSTAINED in part and OVERRULED in part** and that the Motion [#177] be **GRANTED in part** to the extent that sanctions be imposed as discussed below.

## I. Certified Facts

Pursuant to 28 U.S.C. § 636(e)(6)(B), "[u]pon the commission of any such act . . . (B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where . . . (iii) the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge . . . ." This case has been referred to the

undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) via an Order of Reference [#12] entered by the District Judge. Pursuant to 28 U.S.C. § 636(e)(6), in a civil contempt case:

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before the district judge.

The magistrate judge's contempt authority is limited to certifying the facts to the District Judge. *Big O Tires, LLC v. D & T Auto Sales & Serv., Inc.*, No. 09-cv-01509-MSK-BNB, 2010 WL 1568571, at * 2 (D. Colo. Jan. 8, 2010) (quoting *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008)). The undersigned hereby finds and certifies the following facts that are material to the issue of contempt:

(1) On March 13, 2020, the parties filed a Joint Motion for Entry of Stipulated Protective Order [#31], stating in part that they "agreed to abide by the terms of the attached Protective Order" and requesting that it be made an order of the Court.

(2) On March 17, 2020, the Court granted the March 13, 2020 motion and entered the Joint Stipulated Protective Order [#34] (the "Protective Order") as an order of the Court. *Minute Order* [#33].

(3) The Protective Order [#34] provides a process for designating material as confidential which otherwise would be publicly accessible. *Protective Order* [#34] § E. ("Procedure for Designating Confidential Material or Attorneys' Eyes Only Material").

(4)  The Protective Order [#34] provides a process for challenging the opposing party's confidentiality designations.  *Protective Order* [#34] § I. ("Challenges to CONFIDENTIAL and CONFIDENTIAL-AEO Designations").

(5)  On August 28, 2020, Plaintiff filed a Motion to Withdraw from Stipulated Protective Order Due to Defense Abuse [#80], which was denied by the Master on October 29, 2020.  *Order* [#110].

(6)  On December 4, 2020, Plaintiff objected to Order [#110] by filing the Re-Filed FRCP 53(f)(3) Objections to the Special Master's Order Improperly Restricting the Public Record and Enforcing Disputed Material Contract Terms [#138], which the undersigned overruled on April 21, 2021.  *Order* [#173].

(7)  On May 5, 2021, Plaintiff filed an FRCP 72(a) appeal of the Magistrate Judge's Order [ECF 173] Summarily Affirming a "Clearly Erroneous" Special Master Ruling [ECF 110] [#184], which remains pending before the District Judge.

(8)  Pursuant to the Protective Order [#34], Defendant designated three documents as "Attorneys' Eyes Only": (a) October 2015, Job Changed (DENVER HEALTH_000095); (b) Sheila Paukert, HIPPA violation (DHHA017474-77); and (c) Culture of Retaliation (DHHA017478-91).  *Motion* [#177] at 5-6, 8.

(9)  Pursuant to the Protective Order, "Attorneys' Eyes Only Material" may be disclosed only to Counsel of Record in this case and to others not relevant to this Recommendation.  *Protective Order* [#34] § D.

(10) Pursuant to the Protective Order [#34], "Counsel of Record" is defined as "law firms that are counsel of record in the Litigation, including the firms' partners, associates, of counsel and non-attorney employees, whether employed full or part-time or on a

temporary basis, including legal assistants and/or paralegals employed by any of the foregoing to whom it is reasonably necessary to disclose Material, Confidential Material or Attorneys' Eyes Only Material.  Counsel of Record does not include any In-House Counsel identified in this Order." *Protective Order* [#34] § A.7.

(11)  On April 14, 2021, Plaintiff disclosed the three documents referenced in (8) above to two persons who are not "Counsel of Record" in this case and who are not otherwise permitted to see such documents under the terms of the Protective Order [#34]. *Response* [#188] at 3.

(12)  The persons referenced in (11) above to whom the documents were disclosed were Brent Johnson ("Johnson") of the law firm Fairfield and Woods, who is counsel for Defendant in a separate litigation matter, and Scott Sweeney ("Sweeney") of the law firm Wilson Elser Moskowitz Edelman & Dicker, LLP, who is counsel for an individual former employee of Defendant who is no longer associated with Defendant. *Motion* [#177] at 4; *Pl.'s Counsel's April 14, 2021 E-mail* [#177-2, #188-1].

## II.  Analysis

**A.   Whether Plaintiff Disobeyed the Protective Order**

It is well-settled that "[a] district court has broad discretion in using its contempt power to require adherence to court orders." *United States v. Riewe*, 676 F.2d 418, 421 (10th Cir. 1982).  Civil contempt has a remedial objective and seeks to compel future compliance with Court Orders.  *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827-28 (1994).  To hold a party in civil contempt, the Court must find, by clear and convincing evidence, that (1) a valid Court order existed; (2) the contemnor had knowledge of that order; and (3) the contemnor disobeyed the order. *FTC v. Kuykendall*,

371 F.3d 745, 756-57 (10th Cir. 2004). Defendant has the burden of proof that these elements are met. *Id.* Here, the Court has independently found that a valid Court Order [#34] existed, *see supra § I.(6)*, and there is no dispute that Plaintiff had knowledge of that Order [#34]. Thus, a finding of contempt depends on the third element, i.e., on whether Defendant has provided clear and convincing evidence that Plaintiff violated the Order [#34].

The Protective Order [#34] specifically enjoins either party from disclosing documents designated as "Attorneys' Eyes Only Material" to anyone not listed in Section D. of the Protective Order [#34]. There is no dispute that Plaintiff's counsel disclosed three documents so designated to two persons not listed in Section D. of the Protective Order [#34], i.e., Mr. Johnson and Mr. Sweeney. That is not the end of the analysis, however. Plaintiff's primary argument in her Objection [#207] is that she timely objected to Defendant's designation of the three documents at issue, and that, because Defendant did not move the Court to resolve the dispute over the documents' protected status, such protection was lost pursuant to Section I. of the Protective Order [#34], the disclosures were permissible, and there was therefore no violation of the Protective Order [#34].

The Master disagreed with Plaintiff, finding that Plaintiff never objected to Defendant's designation of these documents, stating:

> 1. October 2015, Job Changed (DENVER HEALTH_000095): Plaintiff makes no mention of it in the October 21, 2020 e-mail;
>
> 2. Sheila Paukert, HIPPA violation (DHHA017474-77): Plaintiff states: 1) she will not challenge redactions made on the documents; 2) counsel cannot withhold information from her client; and 3) counsel has "no intention to seek to restrict these documents if appended to a pleading, particularly a dispositive one;"

> 3. Culture of Retaliation (DHHA017478-91): Plaintiff includes DHHA017478-81 in the same objections stated for DHHA017474-77 above. Plaintiff states no objection to DHHA017478-91 in this e-mail.

*Order* [#205] at 6 (citing *E-mail* [#188-2]). Defendant, however, "does not contest that Plaintiff timely objected to the designation" of the latter two documents. *Response* [#190] at 4. The Court agrees with the Master that objections to the second and third documents could have been more clearly made. However, given that, at the beginning of the October 21, 2020 e-mail at issue here, Plaintiff's counsel states: "Please consider [this correspondence] a challenge to several document designations in [Defendant's] October 15, 2020 'Fourth Supplemental Confidentiality and Privilege Log,'" and given that the parties are in rare agreement that Plaintiff's e-mail constitutes adequately-made objections as to these two documents, the Court finds that Plaintiff's objections to Defendant as to those two documents were sufficiently made. *See Protective Order* [#34] ¶ 30 ("Any . . . challenge [to the propriety of CONFIDENTIAL or CONFIDENTIAL-AEO designations] shall be set forth in a written notice, served on Counsel of Record for the Producing Party and all other Parties in the Litigation, and identify with particularity the Material the Receiving Party contends should be differently designated."); *see also id.* ¶ 5 (defining "Receiving Party" as "a Party that receives Material, including Confidential Material or Attorneys' Eyes Only Material from a Producing Party in the Litigation").

After properly challenging document designations, the Protective Order next requires "[t]he parties [to] use best efforts to resolve the challenge promptly and informally." *Id.* The parties complied with this requirement by continuing to correspond over the following days regarding the designations. On October 26, 2020, Plaintiff's counsel sent Defendant's counsel an e-mail stating in part:

> That being said, I am proceeding with an abundance of caution under the [Protective Order] unless and until resolved by the District Court. I do not understand, and maybe you can explain to me, how a court can enforce a stipulated protective order based upon material disputes of fact regarding its applicability. As you know, we do not consider decision-makers and named comparators as meriting the same protection as the typical innocent third party witnesses/comparators that commonly get dragged into employment litigation. Again, I will continue to join forces with you toward protecting those legitimate privacy interests. But had I contemplated how [Defendant] would use the SPO to interfere with the provision of, restrict public access to, relevant evidence (e.g. decision-maker and pretext), I would never have entered into it in the first place and will know better next time.

*See* [#177-5] at 1-2. Defendant argues that this statement by Plaintiff's counsel resolved the designation issues, while Plaintiff's counsel asserts that this e-mail did no such thing. Carefully read, the Court finds that the meaning behind the e-mail is ambiguous and, in context and liberally construed, is susceptible to either party's interpretation.

More specifically, assuming Defendant's good faith interpretation, the documents at issue remained designated as "CONFIDENTIAL-AEO," and any subsequent disclosures to impermissible persons were clear violations of the Protective Order [#34]. However, assuming Plaintiff's good faith belief that the designations were still in dispute, the Protective Order [#34] next states: "If the parties cannot resolve the challenge within fourteen (14) calendar days after the Producing Party receives the notice, it shall be the obligation of the Producing Party to make an appropriate motion pursuant to Magistrate Judge Mix's discovery procedures requesting that the Court determine whether the disputed information has been properly designated as CONFIDENTIAL or CONFIDENTIAL-AEO." *Protective Order* [#34] ¶ 30. The challenge to the second and third documents was made by e-mail on October 21, 2020, and thus the deadline for Defendant, as the Producing Party, to make an appropriate motion was November 4,

2020, i.e., fourteen days later. *See id.* There is no dispute that no such motion was made by Defendant, timely or otherwise.

Pursuant to the Protective Order [#34], "[i]f the Producing Party fails to make such a motion within the prescribed time, the Material shall lose its designation and shall not thereafter be treated as CONFIDENTIAL or CONFIDENTIAL-AEO." *Protective Order* [#34] ¶ 30. This loss of confidentiality status is automatic under the Protective Order [#34] and does not require a Court order or other action. *See id.* Thus, again assuming Plaintiff's interpretation of the October 26, 2020 e-mail is correct, the second and third documents at issue here automatically lost their confidentiality designation as of November 5, 2020.

However, based on Plaintiff's counsel's April 14, 2021 e-mail providing the three documents at issue to Mr. Johnson and Mr. Sweeney, it appears to be an almost inescapable conclusion that Plaintiff's interpretation of her October 26, 2020 e-mail is an attempt to retroactively justify her actions in disclosing the three documents. *See* [#177-2]. It is clear from the April 14, 2021 e-mail that Plaintiff's counsel believed at the time she shared the documents that they were still designated as "Attorneys' Eyes Only":

> And finally, there are a few documents marked "Attorneys' Eyes Only." You are attorneys. You (and DHHA) deserve to know how documents in our possession . . . can and will be used against DHHA as comparator evidence. And in that spirit, I am sharing them with you, asking that you respect the "Attorneys' Eyes Only" designations on some of these comparator documents.

*Id.* at 1. Based on this e-mail, it appears that Plaintiff's counsel believed as of April 14, 2021 (approximately six months after the documents at issue were designated as "Attorneys' Eyes Only" and approximately five months after the documents should have

been de-designated under Plaintiff's theory), that the documents she was sharing retained their confidentiality designations and that, in short, she did not care or did not understand/recall the definition of "Attorneys' Eyes Only" when she shared the documents with Mr. Johnson and Mr. Sweeney.

Regardless, although there *may* have been a discovery violation with respect to the documents titled "Sheila Paukert, HIPPA violation (DHHA017474-77)" and "Culture of Retaliation (DHHA017478-91)" if adjudicated under a "preponderance of the evidence" standard, the Court cannot find on the record before it that any such potential violation meets the "clear and convincing evidence" standard required for civil contempt. "Clear and convincing evidence is evidence that places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). This higher standard is in contrast to a preponderance of the evidence, which means that the evidence, considered in light of all the facts, proves that something is more likely so than not so. *Harvey v. Gen. Motors Corp.*, 873 F.2d 1343, 1350 (10th Cir. 1989). As noted, the October 26, 2020 e-mail on which the parties rely to show that, in Plaintiff's view, the documents were de-designated and, in Defendant's view, the parties' resolved their differences and that the documents remained designated as confidential, is ambiguous. One explanation is that, as has happened so often in this lawsuit, the parties talked past one another using generalized language rather than directly engaging and clearly stating positions and areas of disagreement. Another explanation is that Plaintiff is using the e-mail to retroactively justify her disclosures. Although the April 14, 2021 e-mail makes this

latter explanation "more likely so than not so," the Court cannot find that the "clear and convincing evidence" standard required for civil contempt has been met as to the second and third documents.  *See Kuykendall*, 371 F.3d at 763 ("Though [civil] contempt proceedings may have somewhat diluted procedural requirements, they do not lessen the need for clear and convincing evidence of [an enjoined party's] liability.").

However, with respect to the first document titled "October 2015, Job Changed (DENVER HEALTH_000095)," Plaintiff has not directed the Court's attention to any evidence showing that she objected at any time to this specific document's designation. Although she generally cites to the October 21, 2021 e-mail discussed by the Master, there is no reference in the email to this document.  This document was shared by Plaintiff with Mr. Johnson and Mr. Sweeney despite its clear designation as "Attorneys' Eyes Only" material and in the absence of any objection to its designation.  Thus, the Court finds that Defendant has provided clear and convincing evidence that Plaintiff's counsel violated the Protective Order [#34] as to the first document.

Accordingly, the Court **sustains** Plaintiff's Objection [#207] as to "Sheila Paukert, HIPPA violation (DHHA017474-77)" and "Culture of Retaliation (DHHA017478-91)" but **overrules** the Objection [#207] as to "October 2015, Job Changed (DENVER HEALTH_000095)."

B.   **Plaintiff's Counsel's Defense to Noncompliance**

Once a prima facie case is established, the alleged contemnor must produce evidence explaining her noncompliance.  *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (citations omitted); *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2960 at 381-82 (2d ed. 1995).  Here, after a thorough review of the

relevant filings, the Court adopts the Master's recitation and well-reasoned analysis regarding Plaintiff's counsel's defenses and the Master's ultimate finding that Plaintiff failed to provide any adequate defense to noncompliance. *Order* [#205] at 3-8.

**C.     Sanctions**

Sanctions for civil contempt may be imposed only (1) "to compel or coerce obedience to a court order" or (2) "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018). Here, the Master recommended (1) that Plaintiff's counsel be ordered to pay a fine in the amount of $250.00, (2) that Plaintiff's counsel be ordered to pay Defendant's fees and costs for preparing the Motion [#177] and related Reply [#190], and (3) that Plaintiff's counsel be advised that any further violation of the terms of the Protective Order [#34] will result in more serious sanctions. *Order* [#205] at 10.

Regarding the Master's recommendation that Plaintiff's counsel be ordered to pay Defendant's fees and costs for preparing the Motion [#177] and related Reply [#190], this sanction falls under the second type of permissible civil contempt sanction, i.e., "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Acosta*, 884 F.3d at 1238. "The amount of the compensatory sanction must be based upon the actual losses sustained as a result of the contumacy." *Id.* at 1240 (internal quotation marks omitted). "Therefore, a direct causal relationship must exist between the amount of damages and the violation . . . ." *Id.* In defining this test, the Tenth Circuit relied on *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183-84 (2017), which "involved a district court's order requiring an offending party to pay the other

party's legal fees." *Id.* The Tenth Circuit adopted the test "that the sanction must be limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Id.* (internal quotation marks omitted) (characterizing this causal connection as a "but-for test"). As the Master noted, the Tenth Circuit has affirmed civil contempt sanctions ordering an attorney to pay fees incurred by the opposing party in briefing a motion for sanctions premised on the attorney's violation of a protective order. *Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1091 (10th Cir. 2010). Here, the Court finds no error in the Master's recommendation that Plaintiff's counsel be required to pay Defendant's fees and costs for preparing the Motion [#177] and related Reply [#190]. Thus, to the extent Plaintiff contests this sanction, the Objection [#207] is **overruled**.

Next, the Court turns to the Master's recommendation that Plaintiff's counsel be ordered to pay a fine in the amount of $250.00. *Order* [#205] at 10. Although labelled a "fine" in the Order [#205], the Court finds the sum better categorized as a permissible civil contempt sanction "to compel or coerce obedience to a court order." *See Acosta*, 884 F.3d at 1238. "[B]ecause coercive sanctions seek to avoid the harm threatened by continued contumacy, the sanctions can remain only until the contemnor complies with the order." *Id.* at 1239 (internal quotation marks omitted). "Thus, the sanctioned party must be able to immediately end the sanction by complying with the court order." *Id.* (citing *Shillitani v. United States*, 384 U.S. 364, 370-71 (1966) (noting that a coercive sanction must give the contemnor an "opportunity to purge himself of contempt")). In *Acosta*, the district court based its sanction on the risk that the defendants "might again" engage in "what it saw as repeated and willful violations." *Acosta*, 884 F.3d at 1239.

However, because there was no evidence of an *ongoing* violation at the time of the sanction, the Tenth Circuit found that the sanction "did not comply with the requirement of 'continued contumacy'," that "there was nothing that [the defendants] could do to bring themselves into compliance," and that, "[a]s a result, [the defendants] had no way to purge themselves of contempt." *Id.* In short, the Tenth Circuit held that "[a] coercive sanction cannot be imposed on a party that is currently in compliance just to ensure future compliance." *Id.*

Unlike in *Acosta*, there has been, and continues to be, an ongoing violation of the Protective Order [#34] here, which provides in relevant part:

> If a Receiving Party learns that, by inadvertence or otherwise, Confidential Material or Attorneys' Eyes Only Material has been disclosed to any person or entity not authorized under this Order, the Receiving Party must immediately, on realizing the disclosure (a) notify the Producing Party in writing of the unauthorized disclosure(s); (b) use its best efforts to retrieve all copies of the Confidential Material or Attorneys' Eyes Only Material and limit further dissemination of the same; (c) provide a copy of this Order to the person or entity to whom unauthorized disclosures were made; and (d) request such person or entity to execute the "Acknowledgment and Agreement to Be Bound by Protective Order."

*Protective Order* [#34] ¶ 32. As discussed above, there is no reasonable basis for Plaintiff to believe that the document titled "October 2015, Job Changed (DENVER HEALTH_000095)" ever lost its confidentiality status. Indeed, it is clear from the April 14, 2021 e-mail quoted above that Plaintiff's counsel was aware of the "Attorneys' Eyes Only" designation of the document which she sent to persons who were not Counsel of Record. *See* [#177-2]. Thus, it is an inescapable conclusion that, from the moment Plaintiff's counsel sent that e-mail, she was aware that, "by inadvertence *or otherwise*, Confidential Material or Attorneys' Eyes Only Material ha[d] been disclosed to [persons] not authorized

under [the Protective] Order." *See Protective Order* [#34] ¶ 32 (emphasis added). There is no evidence that Plaintiff has made any attempt to come into compliance with the requirements of paragraph 32 of the Protective Order [#34]. Therefore, the Court finds that the contempt sanction of $250 for Plaintiff's ongoing violation of the Protective Order [#34] since April 14, 2021, is appropriate and further recommends that the District Judge, at her discretion, impose additional daily sanctions in an appropriate amount after any final order on the Motion [#177] issues until Plaintiff comes into full compliance with paragraph 32 of the Protective Order [#34]. Accordingly, to the extent Plaintiff contests the $250.00 sanction, the Objection [#207] is **overruled**.

Finally, regarding the Master's recommendation that Plaintiff's counsel be advised that any further violation of the terms of the Protective Order [#34] will result in more serious sanctions, the Court is aware of no legal authority holding that a mere warning constitutes a sanction under these circumstances. However, the Court agrees that such warning should be given. **To the extent that future violations of the Protective Order [#34] occur, Plaintiff and her counsel are warned that more serious contempt sanctions, whether civil or, if warranted, criminal, may be imposed.**

### III. Conclusion

In accordance with 28 U.S.C. § 636(e)(6) and in view of the certified facts,

IT IS HEREBY **RECOMMENDED** that the Motion [#177] be **GRANTED in part** to the extent that (1) Plaintiff's counsel be held in civil contempt of Court, (2) Plaintiff's counsel be ordered to pay Defendant's fees and costs for preparing the Motion [#177] and related Reply [#190], *see Aff.* [#206], and (3) Plaintiff's counsel be required to pay a $250.00 sanction plus additional daily sanctions in an appropriate amount after any final

order on the Motion [#177] issues until Plaintiff comes into full compliance with paragraph 32 of the Protective Order [#34].

       IT IS FURTHER **ORDERED** that the Objections [#207] are **SUSTAINED in part** as outlined above and otherwise **OVERRULED** as to all other relief requested.

       IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 24, 2022

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge